

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Southern District of Texas
FILED
OCT 31 2018
David J. Bradley, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAURICIO GROSS (A.K.A. MAURICIO GROSS-DRACH) | Case No. **18 CR 653** |

### INDICTMENT

**THE GRAND JURY CHARGES:**

**COUNT ONE**
**Conspiracy to Commit Wire Fraud**
**Title 18, United States Code, Section 1349**

At all times material to this Indictment:

**A. Defendant**

1. Defendant Mauricio Gross (A.K.A. Mauricio Gross-Drach) was employed by A.T.N. Industries, Inc. and its principals, Victims A & B, starting in or about 2006. As one of the few people in ATN's Houston office, Gross had many duties. One of his duties was to be CEO of Jiafang Steel Pipes Americas, Inc., a small company with few employee(s) that bought and sold steel pipes and related tooling. He became an authorized signer on all of Jiafang Americas' bank accounts, and thus, could originate, transact, and make payments. He exercised control over Jiafang Americas' accounting records. Thus, on Jiafang Americas' behalf, Gross had the ability to open, manage, and close bank accounts; generate invoices; make

payments for those invoices; direct the accounting entries of those invoices and payments; and direct checks and wire transactions related to those invoices and payments.

### B. Companies

2.  <u>A.T.N. Industries, Inc. ("ATN")</u> was a Florida corporation that was engaged in the business of buying and selling tools and equipment to customers in Latin America. It had offices in Miami, Florida and Houston, Texas. ATN, among other things, managed the affairs of Jiafang Steel Pipes Americas.

3.  <u>Jiafang Steel Pipes Americas, Inc. ("Jiafang Americas")</u> was a small Texas corporation with few employee(s) that was based in Houston, Texas. It was owned 50% each by Victims A and B. It bought steel pipe from suppliers in China, including Shanghai Jiafang Steel Pipe (Group) Co., Ltd. and others. It entered into contracts to sell steel pipe to customers in South America. Jiafang Americas' affairs were managed by ATN, and more specifically by Gross who was appointed CEO of Jiafang Americas.

4.  <u>Shanghai Jiafang Steel Pipe Group Co. Ltd. ("Shanghai Jiafang")</u> was a Chinese manufacturer and supplier of steel pipe to ATN and Jiafang Americas.

5.  <u>Huludao City Steel Pipe Industrial Co., Ltd. ("Huludao China")</u> was a Chinese manufacturer and supplier of steel pipe to ATN and Jiafang Americas.

6. <u>Liaoning Northern Steel Pipe Co. Ltd.</u> was a Chinese manufacturer and supplier of steel pipe to ATN and Jiafang Americas.

7. <u>Assumed names ("d/b/a's")</u> are names under which an individual or company chooses to do business, where that name is different from the individual's name or the official business name.

8. <u>Business Management Services Int., LLC ("BMSI")</u> was a limited liability company organized in Texas. Defendant Mauricio Gross and unindicted co-conspirator A are listed as managers and co-owners of BMSI. Without the knowledge of his employers, defendant Mauricio Gross caused BMSI to assume the name "Shanghai Jiafang Steel Pipe Group Co Ltd."

9. <u>Seanway Pipe LLC</u> was a Texas limited liability company formed on or around July 5, 2011. Without the knowledge of his employers, defendant Mauricio Gross caused Seanway Pipe LLC to assume the name "Huludao City Steel Pipe Industrial Co., Ltd."

**C. The Conspiracy**

10. Beginning at least as early as in or about July 2011 and continuing until at least in or about August 2014, in the Houston Division of the Southern District of Texas and elsewhere, defendant

**MAURICIO GROSS (A.K.A. MAURICIO GROSS-DRACH),**

did knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit the following offense against the United States:

> To devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing said scheme and artifice to defraud, transmit (or cause to be transmitted) by means of wire and radio communication in interstate commerce, a writing, sign, signal, picture and sound in violation of Title 18, United States Code, Section 1343.

### D. The Objectives of the Conspiracy

11.  The objectives of the conspiracy were to (a) embezzle money from ATN, Gross's employer, and Jiafang Americas, a company that Gross managed as part of his duties for ATN, and to (b) hide the embezzlement by transferring the money to various bank accounts controlled by the conspirators.

### E. The Manner and Means of the Conspiracy

12.  To achieve their objectives, the conspirators, both known and unknown to the Grand Jury, used, among others, the following manner and means:

> (a) Gross and his co-conspirators caused the creation of shell companies such as Business Management Services Int. LLC (sometimes referred to here as "BMSI") and Seanway Pipe LLC.
>
> (b) To mislead Gross' employers about the true nature of these companies, however, Gross and his co-conspirators caused these shell companies to obtain assumed names that mimicked the names of actual suppliers to ATN and Jiafang Americas.  Now, these shell companies could do business as ("d/b/a") that assumed name.  For example, Gross caused BMSI to assume the name Shanghai Jiafang Steel Pipe Group Co. Ltd.

4

(sometimes referred to here as "Shanghai Jiafang") – mimicking the name of a steel pipe supplier in China. Similarly, Gross also caused Seanway Pipe LLC to assume the name Huludao City Steel Pipe Industrial Co., Ltd. (sometimes referred to here as "Huludao China") – another name of a Chinese supplier.

(c) To receive the embezzled money, the co-conspirators also caused these shell companies to open bank accounts.

(d) To mask the fact that these bank accounts were actually controlled by the conspirators, the conspirators caused these bank accounts to be opened under assumed names that mimicked the names of real suppliers. For example, Gross and unindicted co-conspirator A caused bank accounts to be opened at BBVA Compass Bank in the name of BMSI d/b/a Shanghai Jiafang – again, the same name as one of ATN's suppliers.

(e) The conspirators then embezzled money from Gross' employers by abusing his authority to cause Jiafang Americas to make payments. For example, Gross caused Jiafang Americas to make a payment to what initially appeared to be a supplier such as Shanghai Jiafang – but which was actually directed to a bank account opened by BMSI d/b/a Shanghai Jiafang.

(f) The conspirators transferred the embezzled money by wire transfer that crossed state, and sometimes foreign, boundaries.

(g) To hide the embezzlement from his employers, Gross would sometimes only skim off some of the money. Gross would cause Jiafang Americas to pay a larger amount to a supplier (such as Shanghai Jiafang), route the payment to a bank account opened in the name of a shell company (such as BMSI d/b/a Shanghai Jiafang), and then pay out part of this amount to the real supplier (Shanghai Jiafang) and keep the rest.

(h) The conspirators sometimes sent communications through emails that crossed state, and sometimes foreign, boundaries.

(i) To mislead Gross's employers, Gross would sometimes email them with material misrepresentations, all with the goal of inducing them into paying money that they thought would go to suppliers, but which actually was paid, at Gross's instructions, to bank accounts opened in the name of a shell company that had assumed a name that mimicked the name of a supplier.

5

(j) To prevent their embezzlement from being discovered, the conspirators transferred the embezzled money to different accounts they had opened, often in the names of the shell companies that had assumed names that mimicked the names of real suppliers such as Shanghai Jiafang or Huludao China. Often, the conspirators would transfer the money three or more times to accounts they controlled, all to hide the real nature of the money and make it more difficult to trace.

(k) To hide the embezzlement, Gross, as one of the few people who worked at ATN's Houston office – and the person with authority over Jiafang Americas' accounting records – hid or destroyed records, or simply did not properly document the transactions that supposedly justified the payments he ordered Jiafang Americas to make.

### F. Acts That Furthered the Conspiracy

13. To further the conspiracy and accomplish its objectives, the conspirators, working with each other and others known and unknown to the Grand Jury, committed (and caused others to commit) one or more of the following acts, among others, in the Southern District of Texas and elsewhere.

<u>Assuming the names of Chinese steel pipe suppliers</u>

(a) In or about July 2011, Gross and unindicted co-conspirator A caused Business Management Services Int. LLC ("BMSI") to be formed.

(b) On or about July 7, 2011, Gross, without the knowledge of his employers, filed a certificate of ownership that caused BMSI to assume the name of Shanghai Jiafang Steel Pipe (Group) Co., Ltd.

(c) On or about July 11, 2011, Gross and unindicted co-conspirator A, without the knowledge of Gross' employers, caused BBVA accounts -8289 and -8648 to be opened in the name of Business Management Services Int. LLC d/b/a Shanghai Jiafang Steel Pipe (Group) Co., Ltd.

(d) On or about July 7, 2011, unindicted co-conspirator C authorized Gross to open a bank account in the name of Seanway Pipe LLC.

6

(e) On or about July 7, 2011, Gross, without the knowledge of his employers, filed a certificate of ownership that caused Seanway Pipe LLC to assume the name of Huludao City Steel Pipe Industrial Co., Ltd.

(f) On or about July 11, 2011, Gross, without the knowledge of his employers, caused BBVA -8958 and -1856 to be opened in the name of Seanway Pipe LLC d/b/a Huludao City Steel Pipe Industrial Co. Ltd.

(g) On or about November 17, 2011, Gross and unindicted co-conspirator C added unindicted co-conspirator C's name as a signatory to BBVA - 8958, an account that Gross had opened, as sole signatory, in the name of Seanway Pipe, LLC d/b/a Huludao City Steel Pipe Industrial Co. Ltd.

(h) On or about November 17, 2011, Gross and unindicted co-conspirator C added unindicted co-conspirator C's name as a signatory to BBVA - 1856, an account that Gross had opened, as sole signatory, in the name of Seanway Pipe, LLC d/b/a Huludao City Steel Pipe Industrial Co. Ltd.

July 2, 2012 embezzlement of $64,014.30

(i) On or about June 22, 2012, Gross emailed Victim A, who was one of ATN's principals, misrepresenting that additional money was required to pay Huludao City Steel Pipe Industrial Co. Ltd., and directed Victim A to wire money to BBVA 8958, a bank account that Gross had opened in the name of Seanway Pipe, LLC d/b/a Huludao City Steel Pipe Industrial Co. Ltd.

(j) On or about July 2, 2012, based on misrepresentations made by Gross, Victim A (one of ATN's principals) wired a total of $574,160.70 into BBVA 8958, a bank account that Gross had opened in the name of Seanway Pipe, LLC d/b/a Huludao City Steel Pipe Industrial Co. Ltd.

(k) On or about July 3, 2012, Gross caused BBVA 8958, a bank account that Gross had opened in the name of Seanway Pipe, LLC d/b/a Huludao City Steel Pipe Industrial Co. Ltd., to wire out $510,146.40, to Huludao City Steel Pipe Industrial Co. Ltd., thereby retaining $64,014.30.

September 6, 2012 embezzlement of at least $182,426.15

(l) On or about September 6, 2012, Gross caused Jiafang Americas to wire $2,382,426.15 to Comerica -0549, an account that Gross had opened in the name of BMSI d/b/a Shanghai Jiafang.

(m) On or about September 6, 2012, Gross caused Comerica -0549, an account that Gross had opened in the name of BMSI d/b/a Shanghai Jiafang Steel Pipe Group, to wire out a total of $2,200.000.00, to Shanghai Jiafang Steel Pipe Group, thereby retaining at least $182,426.15.

November 27, 2012 embezzlement of $74,489.23

(n) On or about November 27, 2012, Gross caused Jiafang Americas to issue a check for $74,489.23 that was deposited into Comerica -0549, an account that Gross had opened in the name of BMSI d/b/a Shanghai Jiafang.

December 19, 2012 embezzlement of $47,455.94

(o) On or about December 19, 2012, Gross caused Jiafang Americas to wire $2,047,455.94 from its JPMC -3570 account into Comerica -0549, an account that Gross had opened in the name of BMSI d/b/a Shanghai Jiafang.

(p) On or about December 20, 2012, Gross caused Comerica -0549, an account that Gross had opened in the name of BMSI d/b/a Shanghai Jiafang Steel Pipe Group, to wire out $2,000.000.00, to Shanghai Jiafang Steel Pipe Group, thereby retaining $47,455.94.

December 19, 2012 embezzlement of $24,944.07

(q) On or about December 19, 2012, Gross caused Jiafang Americas to wire $2,024,944.06 from its JPMC -3570 account into BBVA Compass -8958, an account that Gross had opened in the name of Seanway Pipe LLC d/b/a Huludao City Steel Pipe Industrial Co., Ltd..

(r) On or about December 24, 2012, Gross caused BBVA Compass Bank -8958 to wire out $1,999,999.99 to "Huludao City Steel Pipes Ind Co Ltd.," thereby retaining $24,944.07.

December 26, 2012 embezzlement of $17,446.46.

    (s) On or about December 26, 2012, Gross caused Jiafang Americas to wire $167,446.46 from its JPMC -3570 account to Cathay Bank -8254, an account that Gross had opened in the name of BMSI d/b/a Huludao City Steel Pipes Ind Co Ltd.

    (t) On or about December 27, 2012, Gross caused Cathay Bank -8254, an account that Gross controlled and which was opened in the name of BMSI d/b/a "Huludao City Steel Pipes Ind Co Ltd.," to transfer $165,000 to Comerica Bank -0549, an account that Gross had, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang, thereby retaining $2,446.46.

    (u) On or about December 28, 2012, Gross caused Comerica Bank -0549, an account that Gross had, as sole signatory, opened in the name of BMSI d/b/a Shanghai Jiafang, to wire out $150,000.00 to Shanghai Jiafang's Bank of China -8443 account, thereby retaining $15,000.00.

January 22, 2013 embezzlement of $200,000.00

    (v) On or about January 22, 2013, Gross caused Jiafang Americas to wire $1,700,000.00 to the Comerica -0549 bank account that he had opened, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang.

    (w) On or about January 22, 2013, Gross caused the Comerica -0549 bank account that he had opened, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang to wire out $1,500,000.00 to the real Shanghai Jiafang, thereby retaining $200,000.00.

May 9, 2013 embezzlement of $700,000

    (x) On or about May 9, 2013, Gross caused Jiafang Americas to wire $700,000.00 from its JPMC -8080 account to the Comerica -0549 bank account that Gross had opened, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang.

November 4, 2013 embezzlement of $450,000

    (y) On or about November 4, 2013, Gross caused Jiafang Americas to wire $450,000 to the Comerica -0549 bank account that he had opened, as sole

signatory, in the name of BMSI d/b/a Shanghai Jiafang. Before this transfer, the balance was only $9,927.00.

(z) That same day, Gross caused $445,000.00 to be transferred out of Comerica -0549 to Comerica -1425, a bank account that Gross had opened, as sole signatory, in the name of BMSI and Liaoning Northern Steel Pipe Co. Ltd.

(aa) On or about December 30, 2013, Gross caused $460,000.00 to be transferred from Comerica -1425 back to Comerica -0549.

(bb) On or about December 31, 2013, Gross caused $469,770.00 to be wired out of Comerica -0549 to a bank account that Gross had opened at The Hongkong and Shanghai Banking Corp. Ltd. account -8838, in the name of Volanss Systems Co Ltd.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
## Wire Fraud
## Title 18, United States Code, Section 1343

11. The allegations set forth in Count One are re-alleged and incorporated herein.

12. On or about November 4, 2013, in the Houston Division of the Southern District of Texas and elsewhere,

**MAURICIO GROSS (A.K.A. MAURICIO GROSS DRACH)**

the defendant, aiding and abetting others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

10

13. The manner and means of the scheme are described in Section B of Count One, which is incorporated herein by reference.

14. For the purpose of executing said scheme and artifice to defraud, and attempting to do so, defendant cause to be transmitted by means of wire communication in interstate commerce, a writing, sign, signal, and picture, to wit: $450,000 wire from Jiafang Americas' JPMC -3570 account to Comerica -0549, an account opened in the name of BMSI d/b/a Shanghai Jiafang and which lists Mauricio Gross-Drach as sole signatory.

All in violation of 18 U.S.C. § 1343.

## COUNT THREE
### Conspiracy to Commit Money Laundering
### Title 18, United States Code, Section 1956(h)

15. The allegations in Counts One and Two are re-alleged and incorporated herein by reference as if fully set forth herein.

16. Beginning at least as early as in or about July 2011 and continuing until at least in or about August 2014, in the Houston Division of the Southern District of Texas and elsewhere, defendant

**MAURICIO GROSS (A.K.A. MAURICIO GROSS DRACH),**

knowingly and willfully combine, conspire, and agree with others known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

11

to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

### A. The Objective of the Conspiracy

17. The objective of the conspiracy was to conceal and disguise money obtained by fraud.

### B. The Manner and Means of the Conspiracy

18. To achieve their objective, the conspirators, both known and unknown to the Grand Jury, used, among others, the manner and means listed in Count One, Section E:

### C. Acts in Furtherance of the Conspiracy

19. To further the conspiracy and accomplish its objectives, the conspirators, working with each other and others known and unknown to the Grand Jury, committed (and caused others to commit) one or more of the following acts, among others, in the Southern District of Texas and elsewhere on or about the dates listed in Counts Four to Nine below (which are re-alleged and incorporated herein by reference as if fully set forth herein).

All in violation of 18 U.S.C. § 1956(h).

## COUNTS FOUR THROUGH NINE
## Money Laundering
## Title 18, United States Code, Section 1956(a)(1)(B)(i)

20. The allegations in Counts One through Three are re-alleged and incorporated herein by reference as if fully set forth herein.

21. On or about the dates listed below, in the Houston Division of the Southern District of Texas and elsewhere, defendant

**MAURICIO GROSS (A.K.A. MAURICIO GROSS DRACH),**

aided and abetted by others known and unknown to the Grand Jury did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, as described below, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Description |
|---|---|
| 4 | On or about November 4, 2013, Gross caused $445,000.00 to be transferred out of Comerica -0549, a bank account that Gross had opened, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang, to Comerica -1425, a bank account that Gross had opened, as sole signatory, in the name of BMSI and Liaoning Northern Steel Pipe Co. Ltd. |
| 5 | On or about December 30, 2013, Gross caused $460,000.00 to be transferred from Comerica -1425, a bank account that Gross had opened, as sole signatory, in the name of BMSI and Liaoning Northern Steel Pipe Co. Ltd., back to Comerica -0549, a bank account that Gross had opened, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang. |
| 6 | On or about December 31, 2013, Gross caused $469,770.00 to be wired out of Comerica -0549, a bank account that Gross had opened, as sole signatory, in the name of BMSI d/b/a Shanghai Jiafang, to a bank account that Gross had opened at The Hongkong and Shanghai Banking Corp. Ltd. account -8838, in the name of Volanss Systems Co Ltd. |
| 7 | On or about July 30, 2014, Gross caused an amount equivalent to about $226,312.38 to be transferred from The Hongkong and Shanghai Banking Corp. Ltd. -8838, a bank account that Gross had opened in the name of Volanss Systems Co Ltd. to unindicted co-conspirator B. |
| 8 | On or about July 30, 2014, Gross caused an amount equivalent to about $208,496.64 to be transferred from The Hongkong and Shanghai Banking Corp. Ltd. -8838, a bank account that Gross had opened in the name of Volanss Systems Co Ltd. to unindicted co-conspirator B. |
| 9 | On or about July 30, 2014, Gross caused an amount equivalent to about HK $49,661.68 to be issued from The Hongkong and Shanghai Banking Corp. Ltd. -8838, a bank account that Gross had opened in the name of Volanss Systems Co Ltd., as a cashier's check made out to unindicted co-conspirator B. |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## NOTICE OF CRIMINAL FORFEITURE
## (Title 18, United States Code, Section 981(a)(1)(C))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to the defendant that in the event of conviction of the offenses charged in Counts One and Two of this Indictment, the United States intends to seek forfeiture of all property constituting or derived from proceeds traceable to such violation.

## NOTICE OF CRIMINAL FORFEITURE
## (Title 18, United States Code, Section 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendant that in the event of conviction of the offenses charged in Counts Three through Six of this Indictment, the United States intends to seek forfeiture of all property, real or personal, involved in money laundering offenses or traceable to such property.

*Continued on next page*

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against the defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendant in substitution up to the total amount of the money judgment.

DATED this 31st day of October 2018.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE

Foreperson of the Grand Jury

Ryan K. Patrick
United States Attorney

Michael Chu
Assistant U.S. Attorney